IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JAMES BULL, on behalf of himself and a certified class,** | ) ) ) |
| Plaintiff, | ) ) 16 C 11446 |
| v. | ) ) Judge John Z. Lee ) |
| **ILLINOIS UNION INSURANCE COMPANY,** | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Bull ("Bull"), as representative of a certified class and the assignee of US Coachways, brings this action against Defendant Illinois Union Insurance Company ("IUIC"). Bull alleges that IUIC breached its obligations to defend and indemnify US Coachways in a separate suit brought by Bull and the class he represents. IUIC has moved to dismiss, or in the alternative, transfer this case in light of related litigation pending in the Eastern District of New York. For the following reasons, the Court transfers this action to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a). All other motions will be addressed by the transferee court.[1]

---

[1] Given that the Court has decided to transfer the action, it need not reach the issue of whether US Coachways is a necessary party under Federal Rule of Civil Procedure 19, nor decide IUIC's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim.

## Factual Background

Bull, a resident of Ohio, is the representative of a nationally based certified class that entered into a settlement with US Coachways in a prior suit: *Bull v. US Coachways, Inc.*, No. 1:14-cv-05789 (N.D. Ill. settled Nov. 9, 2016) ("the Underlying Action"). Compl. ¶¶ 1, 3, 28, ECF No. 1. The suit claimed that US Coachways had violated the Telephone Consumer Protection Act (TCPA). *Id.* ¶ 7. Under the terms of the settlement, US Coachways stipulated to paying $50,000 of $49,932,375 in return for Bull's agreement to seek recovery from US Coachways' insurer, IUIC, and pursue only IUIC in satisfying the judgment. *Id.* ¶¶ 28–30; Def.'s Mem. Supp. Mot. Dismiss or Transfer 5, ECF No. 10.

During the course of the Underlying Action, US Coachways notified IUIC of the suit and requested a determination of coverage for liability under the TCPA. Compl. ¶¶ 16, 19. IUIC's claims agent, ACE North American Claims, responded on January 13, 2015, and denied coverage. *Id.* ¶ 20; Def.'s Mem. at 3–4. Counsel for Bull thereafter sent a demand letter to IUIC on July 23, 2015. Compl. ¶ 23. In his demand letter, Bull apprised IUIC of his intention to seek an assignment of the policy and requested IUIC's participation in settlement negotiations. *Id.* Again, ACE North American Claims issued a letter declining to participate and reiterating the denial of coverage. *Id.* ¶ 24; Def.'s Mem. at 4. The Underlying Action eventually settled. Compl. ¶ 26. The settlement agreement received final approval on November 9, 2016, and became effective on December 11, 2016. *Id.*

On November 29, 2016, shortly after receiving a copy of the settlement agreement, IUIC filed a declaratory judgment action in the Eastern District of New York, *IUIC v. US Bus Charter & Limo, Inc. et al.*, No. 1:16-cv-06602 (E.D.N.Y. filed Nov. 29, 2016) ("the New York Action"), seeking a ruling that it owes no coverage obligations pertaining to the Underlying Action. *Id.* ¶ 42; Def.'s Mem. at 5–6. Bull is a defendant in the New York Action. Compl. ¶ 42.

Subsequently, on December 19, 2016, Bull filed this diversity action on behalf of himself and the certified class. Compl. ¶ 1.[2] Bull seeks damages for breach of insurance contract, asserting rights assigned to him by the insured, US Coachways, as part of the settlement of the Underlying Action. Compl. ¶ 2. Before the Court is IUIC's motion to dismiss in favor of its first-filed suit, or in the alternative, to transfer this case to the Eastern District of New York, where its suit is pending.[3]

## **Legal Standard**

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Once an appropriate alternate forum is identified, a court undertakes a

---

[2]  Bull sought to have this case reassigned to Judge Pallmeyer, but she denied his request, finding this case unrelated to the Underlying Action. Def.'s Reply 13, ECF No. 19.

[3]  IUIC also requests dismissal under the common-law doctrine of *forum non conveniens*. *Forum non conveniens* is only applicable where the alternate forum is abroad, or in rare circumstances where a state or territorial court would be more convenient. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). Where the alternate forum is another federal district court, and that forum is of "superior convenience," 28 U.S.C. § 1404(a) has displaced the doctrine of *forum non conveniens* and provides for transfer, rather than dismissal. *In re Hudson*, 710 F.3d 716, 718 (7th Cir. 2013). Accordingly, the Court finds that transfer pursuant to § 1404(a) is more appropriate than dismissal in this instance.

two-pronged inquiry into both convenience and the interests of justice to decide whether transfer is warranted. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The movant has the burden of establishing, "by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). The factors relevant to the convenience inquiry include "the availability of and access to witnesses, and each party's access to and distance from resources in each forum," as well as "the location of material events and the relative ease of access to sources of proof." *Research Automation*, 626 F.3d at 978. With regard to the interests of justice, a court will consider "docket congestion and likely speed to trial" in each forum, "each court's relative familiarity with the relevant law," "the respective desirability of resolving controversies in each locale," and "the relationship of each community to the controversy." *Id.* The interest of justice inquiry "may be determinative, warranting transfer or its denial even where the convenience of parties and witnesses points toward the opposite result." *Id.* Because ruling on a motion to transfer venue requires an "individualized, case-by-case consideration of convenience and fairness," the district court is afforded broad discretion and substantial deference in weighing the factors for and against transfer. *Coffey*, 796 F.2d at 219.

The first-to-file rule stands for the principle that a suit "may be dismissed 'for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.'" *Serlin v. Arthur Andersen & Co.*,

4

3 F.3d 221, 223 (7th Cir. 1993) (alteration in original) (quoting *Ridge Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.,* 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)). Although circuits follow the principle in varying degrees, the Seventh Circuit does not rigidly adhere to the first-to-file rule. *Research Automation*, 626 F.3d at 980–82. On the contrary, the Seventh Circuit has held that "the first-filed case may proceed where the principles that govern requests for transfer do not indicate otherwise." *Id.* at 980. Thus, the first-filed status of a case is relevant to the transfer inquiry, but not dispositive.

## Analysis

### I. The First-to-File Rule

As an initial matter, IUIC contends that the first-to-file rule provides for dismissal of this, the second-filed action. Def.'s Mem. at 6. As noted, however, no such mechanical rule exists in the Seventh Circuit. *Research Automation*, 626 F.3d at 980, 982. Instead, filing priority is one of many factors relevant in the § 1404(a) analysis, and transfer, rather than dismissal, is the appropriate remedy. *Id.; see Hecker v. Petco Animal Supplies, Inc.*, No. 16 C 10857, 2017 WL 2461546, at *2–3 (N.D. Ill. June 7, 2017) (collecting Seventh Circuit precedent dictating transfer, rather than dismissal, of the second-filed action). Therefore, IUIC's motion to dismiss pursuant to the first-to-file rule is denied.

Still, Bull raises two objections to allowing the order of filing to even influence determination of whether to transfer his case. Pl.'s Resp. 5–6, ECF No. 18. He asserts that because his suit requests coercive relief, in that it asks the

5

court to order IUIC to pay damages rather than merely declare IUIC's obligations to do so, it should take priority over IUIC's declaratory action. *Id.* Moreover, he asserts the declaratory action should be disfavored as improperly anticipatory. *Id.* In reply, IUIC claims that bringing a declaratory judgment action is "the proper response by a carrier when a coverage dispute becomes ripe for adjudication as occurred when US Coachways agreed to the settlement." Def.'s Reply at 5.

First, Bull is correct to point out that there is a general preference for coercive actions over declaratory judgments. *See Research Automation,* 626 F.3d at 980. But the Seventh Circuit has made clear that this is not a mechanical rule. *Id.; see Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC*, No. 16 C 3401, 2016 WL 6248187, at *2 (N.D. Ill. Oct. 26, 2016) (finding that an automatic rule would conflict with the Seventh Circuit's mandate that first-filed nature of a suit is not dispositive). Furthermore, the Court is inclined to agree with IUIC that declaratory actions are a particularly common response in disputes over the extent of insurance coverage. As a result, this action does not automatically take precedence over the New York action simply because Bull seeks damages in addition to declaratory relief. But, to Bull's point, the coercive nature of his suit further limits the relevance of filing order in this case.

With regard to Bull's second argument, the Court agrees that anticipatory filings, *i.e.*, filings where one party files its lawsuit in the face of a clear threat of an impending suit by the opposing party, are not entitled to priority as the first-filed action. *See Research Automation,* 626 F.3d at 980. But, even assuming *arguendo*

6

that the New York Action can be characterized as anticipatory, that alone would not be dispositive in the transfer analysis. *See Starin Mktg., Inc. v. Swift Distribution, Inc.*, No. 2:16-CV-67-TLS-JEM, 2017 WL 218663, at *2 (N.D. Ind. Jan. 19, 2017) (declining to transfer an allegedly anticipatory suit without more compelling reasons to do so); *see also Ginmar Corp. Promotions, Inc. v. Cardinal Health, Inc.*, No. 08 CV 4109, 2008 WL 4905994, at *2 (N.D. Ill. Nov. 12, 2008) (finding the § 1404(a) factors weighed in favor of transfer after disregarding the first-filed status of the anticipatory suit in the transferee forum). Thus, the Court will not refrain from transferring Bull's suit merely because IUIC's initial suit was arguably anticipatory, but again, this consideration diminishes the importance of filing order.

For the foregoing reasons, the parties' filing order is of little importance to resolving whether to transfer Bull's suit, and thus, IUIC's request to dismiss this suit is denied. The Court will proceed to evaluate whether transfer is nevertheless appropriate under § 1404(a).

## II.  Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

Alternatively, IUIC requests that the instant action should be transferred to the Eastern District of New York, where its suit is currently pending. In deciding whether to transfer venue under 28 U.S.C. § 1404(a), a court considers whether the transferee venue (1) is one where the action might have been brought; (2) is more convenient to the parties and witnesses; and (3) would better serve the interest of justice. *See generally Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

### A.  Where the Action Might Have Been Brought

Transfer pursuant to § 1404(a) is appropriate only when the transferee forum is one where the action "might have been brought." *Id.*  In other words, both venue and jurisdiction must be proper in the alternate forum. *Chem. Waste Mgmt., Inc. v. Sims*, 870 F. Supp. 870, 875–76 (N.D. Ill. 1994).  The parties do not dispute that the Eastern District of New York would be a proper venue under 28 U.S.C. § 1391(b).  Instead, Bull alleges that the transferee forum is inappropriate because New York lacks personal jurisdiction over him.  Pl.'s Resp. at 6–8.  The relevant question under § 1404(a), however, is whether the plaintiff could have brought suit in the transferee forum, for which personal jurisdiction over the plaintiff is not a prerequisite.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) ("There is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff."); *see also Talent Servs. v. Giles*, No. 85 C 1075, 1986 WL 3604, at *1 n.1 (N.D. Ill. Mar. 17, 1986) ("[P]ersonal jurisdiction over a plaintiff is not a prerequisite to the plaintiff's ability to bring suit in a particular court.").  To that end, courts in this district have found personal jurisdiction over the plaintiff irrelevant to a § 1404(a) transfer analysis.  *See, e.g.*, *Cosmetique, Inc. v. Robert Haydon Jones & Assocs., LLC*, No. 04 C 3139, 2004 WL 1510012, at *2 n.1 (N.D. Ill. July 1, 2004).  Therefore, the Court declines to examine whether the Eastern District of New York has personal jurisdiction over Bull.  Having determined that this action could have been brought in the Eastern District of New York, the Court

8

now turns to consider the convenience of the parties and witnesses and the interests of justice.

      **B.**    **Convenience of the Parties and Witnesses**

The Court's assessment of convenience includes consideration of the plaintiff's choice of forum, the convenience of the parties and witnesses, the location of material events, and the relative ease of access to sources of proof. *Research Automation*, 626 F.3d at 978. The movant has the burden of establishing that the alternate forum is clearly more convenient. *Coffey*, 796 F.2d at 219–20. On balance, the Court is persuaded that the Eastern District of New York would be a more convenient forum in which to litigate this matter.

As an initial matter, Bull contends that he has chosen to litigate in Illinois, and that choice should not be disturbed. Pl's Resp. at 9. He is correct that, ordinarily, there is a preference for leaving the plaintiff's choice of forum undisturbed. *Research Automation*, 626 F.3d at 979. In cases such as this one, however, where parallel suits are pending in separate federal districts, "this factor loses its significance entirely: each case has a plaintiff, and one of them will necessarily be disturbed." *Id.* Consequently, because both Bull and IUIC are plaintiffs in their respective suits, no presumptive weight will be afforded to plaintiff's choice of forum in this case. Thus, this factor is neutral.

On the other hand, in regard to the convenience of the parties, Illinois is plainly a convenient forum for Bull, because he filed suit here and pursued the Underlying Action here. IUIC concedes that the Northern District of Illinois would

9

not be an inconvenient forum for IUIC, whose principal place of business is in Chicago. Def.'s Reply at 14. Concern for the convenience of parties, therefore, weighs against transfer.

The next factor, convenience of witnesses, is often viewed as the most important of the convenience factors. *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 836 (N.D. Ill. 2004). The convenience of party witnesses is afforded less weight than the convenience of non-party witnesses. *R&Q Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, No. 15-CV-7784, 2016 WL 1247478, at *3 (N.D. Ill. Mar. 30, 2016). Parties are generally required to identify specific witnesses and the general content of their testimony before the Court will consider their convenience. *See Taylor v. Midland Funding, LLC*, 94 F. Supp. 3d 941, 946 (N.D. Ill. 2015). Here, IUIC specifically identifies two non-party witnesses who would be inconvenienced if this litigation were to proceed in Illinois. *See* Def.'s Mem at 11–12; *see also id.*, Ex. 1, Kramer Aff. The first, Michael Kramer, an employee of ACE Westchester who was involved with underwriting the policy on behalf of IUIC, is currently located in Manhattan. The second, Brandon Testa, is a New York broker licensed and based in New York who negotiated and issued the policy in question. IUIC indicates that their testimony may be necessary to interpret the policy's scope of coverage and whether IUIC's conduct amounts to bad faith or unfair practices.

Def.'s Mem. at 2; Def.'s Reply at 2. Concern for IUIC's non-party witnesses, therefore, weighs in favor of transfer to New York.[4]

Yet Bull would discount this factor's significance altogether, contending that witness testimony is unlikely to be needed in a dispute over insurance coverage such as this one, which concerns interpretation of a written insurance policy. Pl.'s Resp. at 10–11. Some courts have noted that witness testimony provides little value when only the interpretation of an insurance contract is in dispute. *Grange Mut. Cas. Co. v. Hallmark Specialty Ins. Co.*, No. 1:14-CV-00823, 2015 WL 5552660, at *4 (S.D. Ind. Sept. 16, 2015) (finding witness testimony often provides little value to the interpretation of an insurance policy). Other courts, however, have found that witness testimony is valuable to an insurance coverage dispute. *Bhd. Mut. Ins. Co. v. GuideOne Mut. Ins. Co.*, No. 1:10-CV-462, 2011 WL 1627114, at *5 (N.D. Ind. Apr. 28, 2011) (finding the location of witnesses who made insurance coverage decisions material to the decision to transfer venue). Indeed, insofar as the parties' intentions in forming the agreement are at issue or language of the agreement is ambiguous, witness testimony may be necessary. *See Wash. Nat'l Life Ins. Co. v. Calcasieu Par. Sch. Bd.*, No. 05 C 2551, 2006 WL 1215413, at *11 (N.D. Ill. May 2, 2006) (finding that witnesses could provide relevant and perhaps key evidence in determining policy coverage). And, where, as here, an insurer's alleged unfair practices are at issue, witness testimony may also be relevant to that issue. In this

---

[4] In addition, US Coachways, which is based in New York, would be inconvenienced to the extent its participation in this suit, even if only as a witness, requires it to appear here while litigating the same dispute in the Eastern District of New York.

11

instance, therefore, the Court is persuaded that IUIC's non-party witnesses could be helpful, or even necessary, to resolve this dispute. For this reason, the Court finds that the convenience of non-party witnesses—a key factor in the convenience analysis—weighs in favor of transfer.

The remaining convenience factors either support transfer or are neutral. As the parties note, the material event underlying an insurance coverage dispute such as that here is the decision to deny coverage. *Evangelical Lutheran Church in Am. v. Atl. Mut. Ins. Co.*, 973 F. Supp. 820, 823 (N.D. Ill. 1997). Bull asserts that the decision to deny coverage occurred in Illinois, evidently based on no more than the fact that IUIC is incorporated and has its principal place of business here. Pl.'s Resp. at 2. For its part, IUIC asserts that the decision to deny coverage was issued by and through IUIC's claims representatives based in or around New York. Def.'s Reply at 12. Indeed, the letter denying coverage, which Bull attached to his complaint, was issued by ACE North American Claims. Compl., Ex. 1. Thus, because it appears that New York, rather than Illinois, is the site of the material event giving rise to the dispute, this factor supports transfer. Finally, with regard to the relative ease of access to sources of proof, documentary evidence is easily transferable and access would not pose a significant burden in either forum. *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006). Thus, this factor is neutral.

In sum, although the convenience of the parties weighs against transfer, the convenience of non-party witnesses weighs in favor, and this latter factor is more

12

important. In addition, the location of the decision to deny coverage—the material event at issue—weighs in favor of transfer. Finally, the relative ease of access to the sources of proof factor is neutral. On this basis, the Eastern District of New York is the more convenient forum.

### C. Interests of Justice

The interests of justice—the second element of the § 1404 inquiry—reflects a concern for the "efficient administration of the court system" and thus, a court will compare: the respective desirability of resolving controversies in each locale, each court's relative familiarity with the relevant law, docket congestion and likely speed to trial, and the relationship of each community to the controversy. *Research Automation*, 626 F.3d at 978. The interest of justice inquiry carries greater weight than concern for convenience. *Id.* ("The interests of justice may be determinative, warranting transfer or its denial even where the convenience of the parties or witnesses point toward the opposite result."). Here, in addition to convenience weighing in favor of transfer, the Court finds transfer to the Eastern District of New York would better serve the interests of justice.

First, it is generally desirable to resolve related litigation in the same forum.[5] *See Coffey* 796 F.2d at 221 ("Related litigation should be transferred to a forum where consolidation is feasible."). The declaratory action pending in New York will

---

[5] Bull contends that the instant action is related to the Underlying Action despite the fact that Judge Pallmeyer denied his motion to reassign the instant action to her. The Court agrees with Judge Pallmeyer and finds the issues raised in each action to be distinct from the Underlying Action. *Cf. Evangelical Lutheran Church*, 973 F. Supp. at 823 (finding the declaratory action to have "nothing to do with the merits of the underlying [tort] action").

13

decide the same issues presented in this lawsuit. Bull has alleged that IUIC breached its duty to defend and indemnify US Coachways in the Underlying Action, Compl. ¶¶ 45–54, which is precisely the question before the Eastern District of New York. Though Bull does not address this factor in his brief, the Court assumes that, while he would not dispute the value of consolidation as a general matter, he would prefer consolidation here, rather than in New York. But additional factors, such as convenience of witnesses, the situs of material events, familiarity with the relevant law, and docket congestion point toward New York as the more appropriate forum. Therefore, to the extent that consolidation with the New York Action is feasible, it would be most prudent to consolidate in the forum best suited to hear the action, and thus, this concern favors transfer.

Next, "[i]n a diversity action it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law." *Coffey*, 796 F.2d at 221. New York law controls the interpretation of the policy in question.[6] Def.'s Mem. at 8. Federal judges sitting in New York are more likely familiar with New York law. While this factor is of limited importance given that district courts regularly apply the laws of other states, *e.g.*, *Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC*, No. 16 C 8306, 2017 WL 372313, at *4 (N.D. Ill. Jan. 26, 2017), it nevertheless weighs in favor of transfer as well.

---

[6] Per Illinois's choice-of-law rules, New York law controls because the policy was delivered in New York to U.S. Coachways, a New York corporation which operated its business in New York. *See Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008) (citing *Lapham–Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995)).

14

The other considerations under the interest of justice inquiry either support transfer or are neutral. The Eastern District of New York's docket is less congested and the average time from filing to trial is shorter than in the Northern District of Illinois, which supports transfer. *See* U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics (Dec. 31, 2016), *http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/12/31-3*. Finally, each community has a relationship to the controversy. While Illinois may have an interest in policing IUIC as an Illinois corporation, New York has an equal interest in enforcing and interpreting insurance contracts entered into in New York. Therefore, this factor does not weigh for or against transfer.

On balance, because this action will concern the same issues as the New York Action, New York law controls the interpretation of the policy, and Bull is more likely to secure speedy relief in the Eastern District of New York, the Court concludes it is in the interests of justice to transfer this case. Based upon this conclusion, and combined with the determination that the convenience factors also weigh in favor of transfer, the Court grants IUIC's motion to transfer this case to the Eastern District of New York.

## Conclusion

For the reasons articulated herein, IUIC's motion to dismiss, or in the alternative, transfer [9] is granted in part and denied in part. The motion to dismiss pursuant to the first-to-file rule is denied, but the Court hereby transfers

15

this suit to the Eastern District of New York forthwith. This case is hereby terminated on this Court's docket.

**IT IS SO ORDERED.**  ENTERED    7/31/17

_____
**John Z. Lee**
**United States District Judge**